DONEGAL MUTUAL INSURANCE
CO., Appellee,

v.

Tammy L. FACKLER, Jeffrey S. Kolar,
Zekarias Dermas and Fireweini Haile,
Husband and Wife, Individually, And
as Parents and Natural Guardians of
Their minor children, A.A. And S.A.

Appeal of: Zekarias Dermas and
Fireweini Haile, h/w

Superior Court of Pennsylvania.

Submitted July 21, 2003.

Filed Oct. 22, 2003.

David J. Foster, Lemoyne, for appellants.

Marc A. Hess, Lebanon, and Jesse L. Pleet, Wyomissing, for Kolar, appellee.

Roger R. Laguna, Steelton, for Fackler, appellee.

Timothy J. Huber, Lebanon, for Donegal Mutual, appellee.

Before: KLEIN, BENDER and TAMILIA, JJ.

TAMILIA, J.:

¶ 1 Zekarias Dermas and Fireweini Haile appeal the December 10, 2002, Order granting summary judgment in favor of appellee, Donegal Mutual Insurance Company, in this declaratory judgment action. The Order effectively enforces a "named driver exclusion" and excludes appellee from liability for injuries incurred by appellants in an automobile accident. We affirm.

¶ 2 On July 16, 1999, Tammy L. Fackler was driving a car owned by the insured, her boyfriend Jeffrey S. Kolar, when she struck the car occupied by appellants and their children. She was arrested at the scene for driving under the influence[1] (DUI). Fackler was uninsured. Appellants brought an action against Fackler for negligence and against Kolar for negligent entrustment. Shortly thereafter, appellee brought this action for declaratory judgment claiming it was not obligated to defend, indemnify or provide liability insurance coverage to Fackler or Kolar since Kolar had executed a "named driver exclu-

---

1. 75 Pa.C.S.A. § 3731, Driving under the influence of alcohol or controlled substance.

sion" with respect to Fackler operating his vehicle. Appellee filed a motion for summary judgment and in its brief supporting the motion stated, as it does in this appeal, the exclusion was due to Fackler's 1996 DUI-related license suspension.[2] *See,* Record # 11, at 7; *see also* appellee's brief at 12.

¶ 3 Appellants did not file a response to appellee's summary judgment motion but did submit legal memoranda in support of their position. The trial court granted the motion without oral argument. It found the Motor Vehicle Financial Responsibility Law[3] (MVFRL) permitted the exclusion of named drivers under certain circumstances[4] and found Fackler's exclusion was valid even though Fackler had no other automobile insurance policy and even though her suspension did not occur during the policy period in question. The trial court also refused to declare Fackler's exclusion to be against public policy even if appellee knew Kolar allowed Fackler to operate his vehicle since it found the policy clearly and unambiguously excluded appellee's liability regardless of whether Fackler's use of the vehicle was permissive. The trial court, therefore, concluded appellee was not obligated to defend, indemnify or provide insurance coverage to Fackler or Kolar.

¶ 4 Appellants raise the following issues on appeal which we will address *seriatim.*

A. Whether the trial court employed the erroneous standard of review in granting summary judgment to the auto insurance company in this declaratory judgment action, failing to view the pleadings in the light most favorable to the appellant family, where there are no controverted facts in the pleadings and at issue is a purely legal question?

B. Whether appellee insurance company should be denied summary judgment and be required to defend its insured and his girlfriend-driver on all claims raised in the appellant injured family's cause of action because the exclusion is not authorized by the [MVFRL], it does

---

2. The named driver exclusion provided:

 It is agreed that effective on and after the date shown below, the Donegal shall not be liable for damages, losses or claims while an insured motor vehicle is being operated by Tammy Fackler. Accepted on October 14, 1998 by Jeffrey S. Kolar. This exclusion also applies to the use of any other motor vehicle to which the terms of the policy would ordinarily be extended and applies whether or not such operation was with the express or implied permission of a person insured under this policy. First Party Benefits and Uninsured/Underinsured Motorists benefits will apply for any Named Person injured as a passenger in or non-occupant of an automobile involved in an accident. Subject otherwise to all provisions of the policy, this endorsement is effective on the above accepted date and is part of: Policy Number PAE 0415487 issued to Jeffrey S. Kolar By Evelyn L. Germer.

 Record, Exhibit B, page 3.

3. The Motor Vehicle Financial Responsibility Law (MVFRL) is found at 75 Pa.C.S.A. § 1701 et seq.

4. *Id.,* § 1718 Exclusion from benefits, (c) Named driver exclusion, provides:

 An insurer or the first named insured may exclude any person or his personal representative from benefits under a policy enumerated in section 1711 or 1712 when any of the following apply:

 (1) The person is excluded from coverage while operating a motor vehicle in accordance with the act of June 5, 1968 (P.L. 140, No. 78), [*see* 40 P.S. § 991.2001 et seq. which replaces the repealed 40 P.S. § 1008.1, et seq.] relating to the writing, cancellation of or refusal to renew policies of automobile insurance.

 (2) The first named insured has requested that the person be excluded from coverage while operating a motor vehicle. This paragraph shall only apply if the excluded person is insured on another policy of motor vehicle liability insurance.

not comply with the Act's provisions on first party benefits, and to deny coverage would be contrary to public and social policy principles in that appellee had actual knowledge of its insured's girlfriend's propensity to drink and drive his car with his permission?

C. Whether appellee insurance company should be denied summary judgment and be required to defend its insured on the negligent entrustment theory of the injured family's cause of action, which issue was not raised in the summary judgment motion?

Appellants' brief at 3.

¶ 5 We begin by noting "[t]his court will only reverse the trial court's entry of summary judgment where there was an abuse of discretion or an error of law." *Sebelin by & Through Sebelin v. Yamaha Motor Corp., USA,* 705 A.2d 904, 906 (Pa.Super.1998).

¶ 6 Appellants first complain the trial court applied an erroneous summary judgment standard in that it did not examine the entire record, did not look at all the pleadings and did not view them in the light most favorable to appellants as the non-moving party.

¶ 7 An appellate court applies the same standard for summary judgment as the trial court. *Biernacki v. Presque Isle Condominiums Unit Owners Assoc., Inc.,* 828 A.2d 1114, 1116 (Pa.Super.2003), *quoting Grandelli v. Methodist Hospital,* 777 A.2d 1138, 1143–44 (Pa.Super.2001). "In reviewing an order granting a motion for summary judgment, an appellate court must examine the entire record in the light most favorable to the non-moving party and resolve all doubts against the moving party." *Sebelin, supra,* at 905.

¶ 8 In its December 10, 2002, Opinion, the trial court noted appellants did not file a response to appellee's motion for summary judgment. It cited *Atkinson v. Haug,* 424 Pa.Super. 406, 622 A.2d 983 (1993), and stated the following.

Regarding a non-moving party's burden in a motion for summary judgment, we emphasize that a non-moving party may not rely merely upon controverted allegations in the pleadings. Rather, the non-moving party must set forth specific facts by way of affidavit, or by some other way as provided by [Pa. R.Civ.P.] 1035[5], demonstrating that a genuine issue of material fact exists.

. . . . .

In its consideration of the record, the court must ignore controverted facts contained in the pleadings and restrict its review to material filed in support of and in opposition to a motion for summary judgment and to those allegations in the pleadings that are uncontroverted.

Trial Court Opinion, 12/10/02, at 5–6.

¶ 9 The trial court continued its analysis as follows.

It appears that Defendants elected to rest upon their pleadings, as they made no response to Plaintiff's Motion for Summary Judgment despite being directed to do so by [Pa.R.Civ.P.] 1035.3 [Response. Judgment for Failure to Respond]. As such, we must ignore the controverted facts contained in the pleadings and restrict our review to material filed in support of and in opposition to the Motion for Summary Judgment and to those allegations in the pleadings that are uncontroverted. Examining the allegations of the pleadings, Plaintiff avers in its Complaint that the named driver exclusion is valid, while Defendants aver in their Answer with

---

**5.** Pa.R.Civ.P. 1035 was rescinded and replaced by Pa.R.Civ.P. 1035 .1 et seq.

New Matter that the named driver exclusion is invalid. As these facts are controverted, we must ignore them.

Considering the material filed in support of and in opposition to the Summary Judgment Motion, Plaintiff filed a Motion for Summary Judgment alleging that the named driver exclusion is valid and annexed a copy of the named driver exclusion as an Exhibit to its Motion. Defendants fail to set forth any specific facts in a response to Plaintiff's Motion demonstrating that named driver exclusion is invalid, thus failing to raise a genuine issue of material fact.

*Id.,* at 6–7, 622 A.2d 983.

¶ 10 The trial court concluded it was not to consider the additional factual averments set forth in the parties' legal memoranda since these averments were not properly entered as provided by the rules of civil procedure regarding motions for summary judgment [6] by pleading, deposition, answers to interrogatories, admissions or affidavits.[7] Considering, therefore, allegations presented in appellee's motion for summary judgment, the copy of the named driver exclusion annexed thereto, appellants' failure to respond to the motion, and the uncontroverted facts in the complaint and answer with new matter, the trial court concluded appellants failed to establish a genuine issue of material fact regarding the validity of the named driver exclusion and appellee was entitled to judgment as a matter of law.

 ¶ 11 We find the trial court properly relied upon and applied the standard as set forth in *Atkinson.* We further agree appellants created no issue of material fact. Significantly too, appellants do not even point to one. Instead, they state,

"[t]he genuine issue of material fact raised by the pleadings is really one of law: was the named driver exclusion valid or not?" Appellants' brief at 10. We agree this is a question of law and therefore it was entirely appropriate for summary judgment disposition. "Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Sebelin, supra,* at 907. Accordingly, we reject appellants' first challenge.

¶ 12 Appellants next argue summary judgment was improper and appellee should be required to defend Fackler and Kolar since they say Kolar repeatedly allowed Fackler to drink and then drive his vehicle, both before and after execution of the exclusion, knowing of her 1996 DUI conviction. Moreover, appellants argue the exclusion is contrary to the MVFRL and public policy since they contend appellee knew or should have known of this course of conduct.

¶ 13 In *Progressive N. Ins. Co. v. Schneck,* 572 Pa. 216, 221–222, 813 A.2d 828, 831–832 (2002), our Supreme Court noted "[t]he overarching public policy of the Motor Vehicle Financial Responsibility Law (MVFRL) is concern over the increasing cost of insurance premiums.... [t]his public policy is exemplified by § 1718(c), which permits named driver exclusions. These exclusions are designed by insurers to avoid covering someone with a bad driving record or in a high-risk category...." *Id.,* at 831–832 (citations omitted). The *Progressive* Court found

---

6. Pa.R.Civ.P. 1035.1 et seq.

7. The trial court went on to consider the allegations set forth in the parties' legal memoranda and still concluded summary judgment was appropriate.

notwithstanding that a named driver exclusion bars underinsured/uninsured motorist coverage due to the foregone liability coverage, the result of the exclusion was "consistent with the public policy of cost containment and consumer choice." *Id.,* at 832. In excluding Fackler from coverage, appellee clearly recognized the risk associated with her driving Kolar's insured vehicle and sought to avoid liability for precisely the scenario that is the subject of the underlying lawsuit. In return for her exclusion and the concomitant risk reduction, Kolar presumably paid a lower premium. This is not contrary to the public policy associated with the MVFRL as set forth by our Supreme Court, but rather is completely consistent with it. Appellants baldly assert appellee knew or should have known Kolar let Fackler drive the insured vehicle. Such knowledge would be all the more reason for appellee to seek to limit its liability.

¶ 14 With regard to appellants' allegation that Kolar repeatedly gave Fackler express or implied permission to use his vehicle, we note the exclusion as set forth in footnote 2 above.

> This exclusion also applies to the use of any other motor vehicle to which the terms of the policy would ordinarily be extended and *applies whether or not such operation was with the express or implied permission of a person insured under this policy.*

(Emphasis supplied.) "Words in an insurance policy must be given a reasonable and normal interpretation. Where the language of a policy is clear and unambiguous, a court is required to give effect to that language." *Progressive, supra,* at 831. We agree with the trial court that the exclusion clearly and unambiguously precludes appellee's liability regardless of whether Fackler's use was permissive. Interestingly, appellants also interpreted this language in their brief and stated, "[t]his means that whether [Fackler] had permission, express or implied, to operate his vehicle, coverage would not be provided to her." Appellants' brief at 23–24.

¶ 15 Appellants also contend the exclusion would be valid and enforceable only if all provisions of Section 1718(c) were met.[8] In other words, they contend the person must have been excluded in accordance with the provisions of 40 P.S. § 991.2001 et seq., pertaining to automobile insurance issuance, cancellation and refusal to renew *and* the first named insured must have requested the person be excluded from coverage and the excluded person must be insured on another policy of motor vehicle liability insurance. Appellants argue since Fackler was not insured on another policy, the requirements of MVFRL Section 1718(c)(2) are not met and therefore, the exclusion violates Section 1718(c).

¶ 16 In support of this argument appellants cite *State Farm Fire & Casualty Co. v. Keenan,* 953 F.Supp. 103 (E.D.Pa.1997), and *Henning v. State Farm Mutual Auto. Ins. Co.,* 795 A.2d 994, 997 (Pa.Super.2002), *appeal denied,* 570 Pa. 687, 808 A.2d 572 (2002), a case decided by this Court that cites *Keenan.* We disagree with appellants that the *Keenan* Court, "[b]y referencing [Section 1718(c)] as the basis for enforcing the 'named driver exclusion,' . . . effectively held that it was valid only if all the section's terms were complied with, including that the person excluded from coverage 'is insured on another policy of motor vehicle liability insurance.' " Appellants' brief at 20. We likewise disagree that this Court held in *Henning* that all provisions of Section 1718(c) must be satisfied. As the trial

---

8. The language of MVFRL Section 1718(c) is set forth in footnote 4 above.

court reasoned, "[t]he language 'when any of the following apply' in § 1718(c) indicates the presence of either circumstance enumerated in subsection (c)(1) or (c)(2) would justify a lawful exclusion pursuant to the MVFRL." Trial Court Opinion at 9 (emphasis added). "When interpreting a statute, the court must begin with the plain meaning of the language used in the statute. Our canons of statutory interpretation instruct that the plain words of a statute cannot be disregarded where the language is free and clear from ambiguity." *Price v. Pa. Prop. & Cas. Ins. Guar. Ass'n,* 795 A.2d 407, 412 (Pa.Super.2002), *appeal denied,* 573 Pa. 698, 825 A.2d 1262, 2003 Pa. LEXIS 780 (2003). Accordingly, we reject this argument.

¶ 17 The requirements of Section 1718(c)(2) are not met since Fackler was uninsured. The exclusion is valid, therefore, only if the requirements of subsection (c)(1) are met, i.e., she must have been excluded in accordance with 40 P.S.

9. 40 P.S. § 991.2004, Valid reasons to cancel policy, (2) provides

> The driver's license or motor vehicle registration of the named insured has been under suspension or revocation *during the policy period;* the applicability of this reason to one who either is a resident in the same household or who customarily operates an automobile insured under the policy shall be proper reason for the insurer thereafter excluding such individual from coverage under the policy but not for canceling the policy.

(Emphasis supplied.)

10. In the instant case, appellants were seeking liability coverage. Appellee argues 75 Pa.C.S.A. § 1718(c) applies only to first party benefits and not to liability coverage but cites no authority. It is true Section 1718, Exclusion from benefits, is in MVFRL Subchapter B, Motor Vehicle Liability Insurance First Party Benefits. We find, however, Section 1718 defines the only valid circumstances under which a driver may be excluded from coverage regardless of the type of coverage sought.

§ 991.2001 et seq., relating to the writing, cancellation of or refusal to renew policies of automobile insurance. Appellants argue Fackler's exclusion due to her 1996 DUI-related suspension is improper since the suspension was not during the policy period. This argument is based upon a reading of MVFRL Section 1781(c) in conjunction with 40 P.S. § 991.2004 Valid reasons to cancel policy, (2).[9] The trial court rejected this argument based upon the sound reasoning of *DeBiasi v. Erie Ins. Exch.,* 37 Pa. D. & C.4th 1 (1997), in which the Allegheny County Court of Common Pleas of was faced with the same argument and strikingly similar facts.

¶ 18 In *DeBiasi,* the plaintiff, fiancée and household member of the insured, had been convicted of a DUI in 1991 and had her license suspended for a month that year. The insurer excluded her from the insured's policy in late 1992. The plaintiff sued the insurer for first party benefits.[10]

Section 1718(c), the language of which is set forth in footnote 4 above, refers to Section 1711. Section 1711 Required Benefits, (b) Minimum policy, states "[a]ll insurers subject to this chapter shall make available for purchase a motor vehicle insurance policy which contains only the minimum requirements of financial responsibility and medical benefits as provided for in this chapter." Section 1702, Definitions, defines "Financial responsibility" as "[t]he ability to respond in damages *for liability* on account of the maintenance or use of a motor vehicle..." (emphasis supplied). Accordingly, we find the exclusionary provisions of Section 1718 extend, not only to first party benefits, but to liability coverage as well.

We also find implicit authority for this conclusion in both *Progressive N. Ins. Co. v. Schneck,* 572 Pa. 216, 813 A.2d 828 (2002), in which our Supreme Court analyzed an exclusion under Section 1718(c) in the context of a claim for underinsured motorists benefits, and in *Henning v. State Farm Automobile Insurance Co.,* 795 A.2d 994 (Pa.Super.2002), *appeal denied,* 570 Pa. 687, 808 A.2d 572 (2002), in which this Court analyzed an exclu-

The court first noted 40 P.S. § 1008.3(a) listed fourteen reasons for which an insurer may not cancel or refuse to write or renew an automobile insurance policy. A license suspension due to a DUI conviction was not among them. The court also agreed with the insurer that under Section 1008.3(e) [11] the insurer could have refused to renew the policy based upon the license suspension if the plaintiff had been the named insured. Consequently, under Section 1008.3(f), [12] the plaintiff's license suspension was a proper reason to exclude her from coverage under the policy. *Debiasi*, at 4. The *Debiasi* court bolstered this conclusion with the following.

> Furthermore, since the legislative scheme authorizes Erie to refuse to write a policy of insurance for plaintiff because of the DUI conviction and the license suspension, Erie should not be required to provide coverage to this same driver through a policy issued to another person. Erie either has a right to refuse to write a policy of insurance for plaintiff based on her DUI conviction and 30–day license suspension or a duty to furnish insurance to plaintiff even though her license was suspended because of a DUI conviction. The legislature would not have intended to exalt form over substance by having any right to deny coverage depending upon who is applying for the insurance.

*Id.*, at 5.

¶ 19 The *Debiasi* court next considered Section 1008.4(2), [13] and the particular language which the *Debiasi* plaintiff and appellants in the instant case allege requires an exclusion to relate only to the policy period during which the license was suspended. The court reasoned the insurer could cancel the policy if the named insured's license was suspended during the policy period. Thereafter, the insurer, as

---

sion under Section 1718(c) in the context of a claim for uninsured motorists benefits. *See Henrich v. Harleysville Ins. Cos.*, 403 Pa.Super. 98, 588 A.2d 50, 52–53 (1991) (holding uninsured motorist benefits were not first party benefits). Our Supreme Court affirmed *Henrich* on different grounds but agreed with this Court's logic in differentiating uninsured motorist benefits from first party benefits. *Henrich*, 533 Pa. 181, 184–185, 620 A.2d 1122, 1123 (1993).

11. 40 P.S. § 991.2003(e) replaces the former section and provides in relevant part:

> An insurer may not cancel or refuse to renew a policy of automobile insurance for two or fewer moving violations in any jurisdiction or jurisdictions during a twenty-four (24) month period when the operator's record indicates that the named insured presently bears five points or fewer, unless

> . . . . .

> (2) The driver's license or motor vehicle registration of the named insured has been suspended or revoked.

> . . . . .

12. *Id.*, 991.2003(f) replaces the former section and provides:

> The applicability of subsection (e) to one, other than the named insured, who either is a resident in the same household or who customarily operates an automobile insured under the policy shall be proper reason for the insurer to exclude that individual from coverage under the policy but not for canceling the policy.

13. *Id.*, 991.2004(2) replaces the former section. The language of this section is set forth in footnote 9 above.

explained above, could refuse to write a new policy based upon a prior license suspension. Similarly, based upon the logic set forth above, an insurer can continue to exclude one who is excluded from a policy based upon a prior license suspension. *Debiasi*, at 5–6. We apply the same logic to the instant case and, accordingly, reject this argument.

¶ 20 Finally appellants contend the trial court did not address appellants' claim of negligent entrustment. Appellants argue the named driver exclusion does not explicitly state it applies to Kolar's negligent entrustment of his insured vehicle and since negligent entrustment is "an entirely different cause of action," summary judgment for appellee was improper. As the trial court found, and as we have also concluded above, the exclusion clearly and unambiguously precludes appellee's liability regardless of whether Kolar gave Fackler permission to drive the vehicle. The tort of negligent entrustment is defined by the Restatement (Second) of Torts § 308, as follows:

§ 308. Permitting Improper Persons to Use Things or Engage in Activities

It is negligence *to permit a third person to use a thing* or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

(Emphasis supplied). *See also, Christiansen v. Silfies*, 446 Pa.Super. 464, 667 A.2d 396, 400 (1995), *appeal denied*, 546 Pa. 674, 686 A.2d 1307 (1996). "Section 308 imposes liability on a defendant because of her own acts in relation to an instrumentality or activity under her control; an 'entrustor's' liability is not dependent on, derivative of, or imputed from the 'entrustee's'

actual liability for damages." *Id.* Since a cause of action for negligent entrustment is based upon the permissive use of a thing, here the insured vehicle, and we have found the exclusion applies regardless of whether Kolar gave Fackler permission to use the vehicle, this claim must fail.

¶ 21 Since we find no abuse of discretion or error of law in the trial court's grant to summary judgment, we affirm.

¶ 22 Order affirmed.